# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHRISTINA JACOBS,**

    **Plaintiff,**

**v.**                                                                                                        **Civil No. 1:13cv164**
                                                                                                                             **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

    **Defendant.**

## REPORT AND RECOMMENDATION

On June 26, 2013, the plaintiff filed a complaint against the United States of America pursuing relief under the Federal Tort Claims Act ("FTCA"). On July 3, 2013, the plaintiff was granted leave to proceed *in forma pauperis* and directed to pay an initial partial filing fee of $64.95. Following an Order granting her extension of time within which to pay the fee, the plaintiff paid the required initial fee on August 12, 2013. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 2, et seq., and 28 U.S.C. §§ 1915(e) and 1915(A).

## I. THE COMPLAINT

In her complaint, the plaintiff alleges that on or about March 31, 2010, she shut her middle finger in her cell door at SFF Hazelton. She further alleges that the injury resulted in two visible lacerations on either side of her finger. According to the complaint, the plaintiff was initially seen by Jamie Hamilton, RN, who referred her to the on duty medical doctor, Janet Shackleford. An x-ray was performed which showed a distal phalange fracture. Apparently, Dr. Shackleford concluded that the injury did not require sutures. Instead, she rinsed the wound, applied betadine and bacitracin, and wrapped the finger with sterile gauze. Although a splint was not applied that day, a splint was ordered

for the following day's dressing change.  On April 1, 2010, the plaintiff returned to the medical unit where she was seen by PA Alicia Wilson, who determined that the skin around the wound was dying and it was medically necessary to suture the wound to keep the plaintiff from losing her entire fingertip. PA Wilson utilized five sutures to close the wound. A hard plastic protective covering was placed over the finger, but there was still no splint available.  The sutures were to be removed in 7 days.  Although the sutures were scheduled for removal on April 8, 2010, they were not removed until April 13, 2010. The plaintiff alleges by then, the skin had begun to grow around the sutures, and they had to be removed forcibly which caused her further pain and suffering. On July 14 , 2010, the plaintiff was transferred tp FPC Marianna.

The plaintiff maintains that on January 10, 2011, she met with MLP Abad at FCP Marianna, who ordered an x-ray of her finger.  The plaintiff indicates that the x-ray was read as abnormal with distal tuft fracture with 2mm displaced fragment.  On January 21, 2011, the plaintiff had a follow-up appointment with MLP Abad, who discussed with her that the wound was old, and she did not think they would do anything at FPC Marianna, but she would schedule her for an appoint with Dr. Toledo. The plaintiff indicates that she saw Dr. Toledo on May 26, 2011, and they discussed the condition of her finger and her remaining options. The plaintiff alleges that Dr. Toledo explained that, in its current sate, the finger would require surgical repair, and it would cause her more pain than she was currently experiencing.[1]

---

[1]The undersigned notes that the plaintiff filed a Bivens action on August 21, 2012, relating to a stress fracture in her right lower leg.  Medical records were supplied by the defendants in that case.  According to those records, the plaintiff was seen on January 10, 2011, by MLP Abad.  The record of that encounter indicates with respect to her Wrist/Hand/Fingers, she had full range of motion, normal active range of motion, normal passive range of motion, and neurovascular was intact.  In addition, she had no joint deformity, malalignment, swelling, ecchymosis, erythema, or tenderness.  Moreover, although the x-ray did reveal a distal tuff fracture with 2 mm displaced fragment, the record of her examination by Dr. Toledo on May 26, 2011, indicates only that he told her there was nothing to be done for the fractured distal tuff, and

As grounds for relief, the plaintiff alleges:

1. Dr. Shackleford was medically negligent when she failed to prescribe pain medications which would effectively control her pain.

2. Dr. Shackleford's decision not to suture her finger constitutes medical negligence and represents a breach of the prevailing professional standard of care.

3. PA Wilson's failure to immobilize her fingertip is medical negligence and represents a breach of the prevailing professional standard.

4. Dr. Shackleford and PA Wilson's failure to refer her to an orthopedic specialist constitutes medical negligence and represents a breach of the prevailing professional standard.

5. As a direct and proximate result of the combined negligence of the government, its agents, servants, and employees, she has suffered with an improperly healed finger, displaced bone fragments, limited range of motion, deformity of her finger, and has become, as a direct and proximate result, disfigured As a result of her injuries, she has suffered pain of mind and body, permanent disability, and disfigurement, and has been damaged in the aggregate sum of at least $2,840,000.00.

6. As a result of these injuries, she will incur future medical expenses, will lose earnings, and will suffer pain of mind and body and will be permanently disabled, disfigured and suffer a substantial loss of earning capability, and post-traumatic arthritis in her hand, all in the total sum of $2,200,000.00.

Accordingly, the plaintiff requests a total of $5,040,00.00 in damages.

## II. Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous,

---

she was simply advised to continue exercising the motion of the fingertip. Although the plaintiff was seen several times thereafter, at least through September 13, 2011, there is no further mention of her finger injury. See 1;12-cv-00131-IMK-JSK (Doc. 32-3).

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[2] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

### III. ANALYSIS

**A. Failure to State a Claim**

The FTCA waives the federal governments' traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Because all of the alleged negligent acts occurred in West Virginia, the substantive law of West Virginia governs this case.

1. Medical Negligence

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent

---

[2] Id. at 327.

4

> health care provider in the profession or class to which the health
> care provider belongs acting in the same or similar circumstances;
> and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. <u>Banfi v. American Hospital for Rehabilitation</u>, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va.2004).[3]

With regard to the appropriate standard of care, plaintiff has completely failed to sustain her burden of proof. Plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of her finger injury.[4] Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant's breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the notice requirements of W.Va. Code §55-7B-6. Accordingly, because the plaintiff has no chance of success, this matter should be dismissed as frivolous.

## VI. Recommendation

For the reasons set forth in this Order, it is recommended that the individual defendants be dismissed, and the United States remain as the proper defendant in this case. Moreover, it is recommended that the plaintiff's Complaint be **DISMISSED WITH PREJUDICE.**

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation

---

[3] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

[4] The undersigned recognizes that the plaintiff alleges that medical staff FPC Marianna indicated that the care she received at FCC Hazelton should have included a referral to an orthopedic specialist and a splint or other bone immobilizing device should have been applied to help the finger heal properly. However, the plaintiff offers no pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the diagnosis or treatment of her finger injury.

6

to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.[5]

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to her last known address as reflected on the docket sheet.

Dated: 9-3-2013

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE

---

[5] 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).