IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHRISTINA JACOBS,**

        Plaintiff,

v. // CIVIL ACTION NO. 1:13CV164
                      (Judge Keeley)

**UNITED STATES OF AMERICA,**

        Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are the motion to dismiss or for summary judgment (dkt. no. 39) filed by the defendant, the United States of America (the "Government"), as well as the motion for leave to supplement (dkt. no. 54) filed by the pro se plaintiff, Christina Jacobs ("Jacobs"). Also pending is the report and recommendation ("R&R") (dkt. no. 62) of the Honorable Robert W. Trumble, United States Magistrate Judge, recommending that Jacobs's complaint be dismissed with prejudice because it is frivolous and fails to state a claim upon which relief can be granted. Jacobs objects to the R&R (dkt. no. 64). For the reasons that follow, the Court **DENIES** the Government's motion to dismiss or for summary judgment, **GRANTS** Jacobs's motion for leave to supplement, **ADOPTS IN PART** and **REJECTS IN PART** the R&R, and **RECOMMITS** this matter to Judge Trumble for further proceedings.

## I. PLEADINGS

In June 2013, Jacobs, who is incarcerated at the Federal Correctional Institution Waseca in Minnesota, filed a complaint in this Court pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., alleging that while she was incarcerated at the Secure Female Facility Hazelton ("SFF Hazelton") in West Virginia the staff was medically negligent by: (1) "fail[ing] to provide sutures to broken finger and fail[ing] to provide effective pain medications"; (2) "fail[ing] to make a referral to an [o]rthopedic [s]pecialist regarding [Jacobs's] broken finger"; and (3) "fail[ing] to immobilize or provide a splint for [Jacobs's] broken finger." (Dkt. No. 1 at 7-8). She alleges that she suffered from "an improperly healed finger, displaced bone fragments, limited range of motion of her finger, disformity of her finger, pain and suffering of the mind and body . . . , loss of enjoyment of life, loss of future earning capabilities, [and] post-traumatic arthritis." Id. at 10. Consequently, she seeks $5,040,000 in damages. Id.

On July 8, 2014, the Government filed a motion to dismiss or for summary judgment, arguing that Jacobs had failed to comply with West Virginia law based on an insufficient screening certificate of merit. Jacobs filed a response brief, as well as a motion for leave to supplement her screening certificate. The Government contends that Jacobs's supplemental filing still falls short of what is required under West Virginia law.

In January 2015, Judge Trumble entered an R&R, in which he concluded that the Government had waived any objection to the sufficiency of Jacobs's screening certificate. He then thoroughly evaluated the merits of Jacobs's complaint, which he found to be frivolous and failed to state a claim upon which relief can be granted. Accordingly, he recommended that the Court dismiss Jacobs's complaint with prejudice.[1]

## II. GOVERNMENT'S MOTION

The Court construes the Government's motion as a motion to dismiss. With that in mind, it agrees with the R&R's finding that the Government has waived its ability to challenge the sufficiency of Jacobs's screening certificate.

Jacobs provided pre-suit notice of her claim and her original screening certificate to the medical staff at SFF Hazelton on May 10, 2013.

> [W]hen a healthcare provider receives a pre-suit notice of claim and screening certificate of merit that the healthcare provider believes to be legally defective or insufficient, the healthcare provider may reply within thirty days of the receipt of the notice and certificate with a written request to the claimant for a more definite statement of the notice of claim and screening certificate of merit.

Syl. Pt. 4, Hinchman v. Gillette, 618 S.E.2d 387, 389 (W. Va. 2005). "[A]ll objections to the notice or certificate's legal

---

[1] Notably, in July 2014, Judge Groh dismissed Jacobs's Bivens action involving a deliberate indifference claim related to the same finger injury. See Jacobs v. Wilson, No. 3:13CV89, 2014 WL 3700553 (N.D.W. Va. July 24, 2014).

3

sufficiency not specifically set forth in the request are waived." Syl. Pt. 5, id.; see also Cooper v. Appalachian Reg'l Healthcare, Inc., No. 5:04CV1317, 2006 WL 538925, at *1-2 (S.D.W. Va. Mar. 3, 2006) (applying Hinchman to deny defendants' Rule 12(b)(6) motions to dismiss "insofar as they seek dismissal due to deficiencies in plaintiffs' pre-suit notice of claim and screening certificate").

The Government did not provide Jacobs with a written request for a more definite statement within thirty days of receiving pre-suit notice of her claim and her screening certificate. Therefore, it waived any objections. Moreover, the Government did not object to the R&R's conclusion regarding its waiver. See Wright v. Collins, 766 F.2d 841, 845 (4th Cir. 1985) ("[A] party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings.").

## III. SCREENING OF JACOBS'S COMPLAINT

Jacobs has sued the Government under the Federal Tort Claims Act, which imposes tort liability on the Government "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The Government will be liable to the same extent a private person would have been liable "under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001) (citing 28 U.S.C. § 1346(b)).

4

All the alleged actions or inactions of the Government occurred at SFF Hazelton in West Virginia. Under West Virginia's Medical Professional Liability Act, Jacobs must prove the following elements to establish a claim for medical negligence:

> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
>
> (2) Such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3(a). Pursuant to 28 U.S.C. § 1915A(b)(1), Judge Trumble determined that Jacobs's complaint failed to state a claim upon which relief may be granted, and that, in any event, all her claims are frivolous. Accordingly, the Court will review Jacobs's complaint under both standards.

**A. Failure to State a Claim**

"The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2) and § 1915A is identical to the legal standard used when ruling on Rule 12(b)(6) motions." Arms v. U.S. Marshals, No. 10-400S, 2010 WL 5055755, at *1 (D.R.I. Oct. 20, 2010) (citation omitted); see also Jackson v. Burgess, No. 2:03CV514, 2003 WL 24101520, at *2 (E.D. Va. Dec. 22, 2003).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943,

5

952 (4th Cir. 1992).  In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'"  Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"  Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547).

**1. Claim One: Sutures and Pain Medications**

Jacobs's first claim actually asserts two different claims against Dr. Janet Shackelford ("Shackelford"), the physician at SFF Hazelton who performed the initial examination of Jacobs's broken finger.  First, Jacobs claims that Shackelford failed to provide sutures.  Second, she claims that Shackelford failed to provide effective pain medications.

6

**(a)**

As to the sutures, Jacobs's proffered medical expert, Dr. Cherron Jenkins ("Jenkins"), a chiropractor, states that, under the applicable standard of care, "sutures or stitches should have been applied" during the initial examination. (Dkt. No. 54-1 at 3). There is no dispute that Shackelford did not apply sutures during the initial examination. (Dkt. No. 44 at 4). Jacobs alleges that, until her finger was stitched the following day, "the skin around the wound was dying and it was medically necessary to suture the wound to keep [her] from losing her entire fingertip." (Dkt. No. 1-2 at 2). She contends that this failure to suture proximately resulted in "limited range of motion and deformity of fingertip." Id. These allegations state a plausible claim under Twombly.

**(b)**

Within the same claim, Jacobs also alleges that Shackelford failed to provide her with effective pain medications. During the initial examination, it is undisputed that Shackelford provided Jacobs with Motrin. (Dkt. No. 44 at 4). According to the complaint, however, the Motrin "did not ease [Jacobs's] pain at all," and "[f]rom the entire night the accident occurred up until the wound was numbed for the sutures and the Tylenol w/ Codeine was administered, [Jacobs] suffered from lack of effective pain medications." (Dkt. No. 1-2 at 2).

Notwithstanding these allegations, Jenkins offered no opinion that Shackelford deviated from the applicable standard of care by prescribing Motrin rather than a stronger medication. To the contrary, she states that "the standard protocol for pain management is the prescription of non-steroidal anti-inflammatory drugs," such as Motrin. (Dkt. No. 54-1 at 2). Because Shackelford followed the standard of care described by Jenkins, Jacobs's claim regarding pain medications is not plausible on its face.

**2. Claim Two: Referral to an Orthopedist**

In her second claim, Jacobs alleges that both Shackelford and SFF Hazelton's physician's assistant, Alicia Wilson ("Wilson"), failed to refer her to an orthopedic specialist. Jenkins opines that the applicable standard of care required a referral to an orthopedic specialist. (Dkt. No. 54-1 at 4). There is no dispute that neither Shackelford nor Wilson referred Jacobs to an orthopedist. Moreover, Jacobs alleges that their failure to refer her proximately caused "[a]n improperly healed finger, displaced bone fragments, pain and suffering, numbness, as well as emotional pain and suffering, and anxiety." (Dkt. No. 1-2 at 3). These allegations state a plausible claim.

**3. Claim Three: Splint**

In her third claim, Jacobs alleges that Shackelford and Wilson acted negligently by failing to provide a splint to immobilize her broken finger. According to Jenkins, "immobilization of [Jacobs's]

8

3rd [sic] finger by splinting or casting should have occurred to prevent excess movement . . . and to ensure proper healing." (Dkt. No. 54-1 at 3). It is undisputed that neither Shackelford nor Wilson splinted Jacobs's finger. Moreover, Jacobs alleges that such failure proximately caused "limited range of motion and deformity of her fingertip," as well as "displaced bone fragments." (Dkt. No. 1-2 at 2). These allegations state a plausible claim.

Based on the face of the pleadings, the Court finds that Jacobs has stated a claim upon which relief may be granted regarding the sutures, the referral, and the splint.

**B. Frivolousness**

The Court turns next to evaluate Jacobs's claims for frivolousness. See 28 U.S.C. § 1915A(b)(1). "[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Examples of frivolous claims include those whose factual allegations are 'so nutty, 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.'" McLean v. United States, 566 F.3d 391, 399 (4th Cir. 2009) (quoting Gladney v. Pendleton Corr. Facility, 302 F.3d 773, 774 (7th Cir. 2002), and Denton v. Hernandez, 504 U.S. 25, 29 (1992)).

The Fourth Circuit "has not suggested that any [] comprehensive definition [of frivolousness] would be either possible or appropriate;" rather, it has recognized that "[t]he

9

word 'frivolous' is inherently elastic and not susceptible to categorical definition." Nagy v. FMC Butner, 376 F.3d 252, 256 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, in evaluating frivolousness, district courts are permitted to "apply common sense, reject the fantastic, and rebut alleged matters with judicially noticeable facts." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 954 (4th Cir. 1995).

### 1. Claim One: Sutures[2]

Shackelford's stated reason for not suturing Jacobs's wounded finger was "to avoid foreign body and decrease chance of infection." (Dkt. No. 44 at 4). Jenkins counters that sutures were necessary during the initial examination "to ensure proper healing, prevent infection and/or further damage, and decrease the chance of long-term effects that include but are [sic] limited to improper healing and cosmetic damages." (Dkt. No. 54-1 at 3). Jenkins's opinion finds support in Wilson's note, which states that Jacobs's lacerations "did require suturing." (Dkt. No. 44 at 6). Furthermore, Jenkins draws a causal connection between Shackelford's failure to suture Jacobs's finger and the need for corrective surgery: "Because care was not taken to address the fracture with suturing or stitches, . . . surgical intervention may

---

[2] The Court need not evaluate whether the pain medications component of Jacobs's first claim is frivolous because it fails to state a cognizable claim.

10

be warranted." (Dkt. No. 54-1 at 3). The Court does not find any of these opinions to be fantastic or delusional.

### 2. Claim Two: Referral to an Orthopedist

According to Shackelford, surgery was not warranted "as the fracture was only two millimeters from the tip of the finger, and her finger's mobility was unaffected." Jacobs, 2014 WL 3700553 at *17. Jenkins, on the other hand, opines that, "[b]ecause Mrs. Jacobs was not referred for further medical evaluation or care, . . . she now suffers pain and numbness in the tip of the affected finger that will more than likely continue for the rest of her life." (Dkt. No. 54-1 at 1-2). Again, the Court cannot dismiss Jacobs's claim as frivolous in light of Jenkins's opinion drawing a causal connection between any failure to refer and Jacobs's alleged injuries.

### 3. Claim Three: Splint

Finally, Jacobs contends that Shackelford and Wilson were negligent in failing to splint her broken finger. As Shackelford stated in her note from the initial examination, "[n]o splint avail[able] will obtain for tomorrow's dressing change." (Dkt. No. 44 at 4). Although Wilson later provided Jacobs with a "hard protective covering for the finger," Jacobs, 2014 WL 3700553 at *5, Jacobs never received a splint. As Jenkins explains, splinting the finger "would help to decrease the chances of any longer term effects that would include not only the pain and numbness Mrs.

Jacobs complains of but also any bone deformity that may lead to joint deformity or arthritis of the joint in the future." (Dkt. No. 54-1 at 3). Based on Jenkins's opinion regarding proximate cause, Jacobs's claim is not frivolous.

## IV. CONCLUSION

Therefore, for the reasons discussed, the Court:

1. **DENIES** the Government's motion to dismiss;
2. **GRANTS** Jacobs's motion for leave to supplement;
3. **ADOPTS IN PART** the R&R to the extent it recommends dismissing Jacobs's claim regarding pain medications for failure to state a claim;
4. **REJECTS IN PART** the R&R to the extent it recommends dismissing Jacobs's remaining claims; and
5. **RECOMMITS** this matter to Judge Trumble for further proceedings consistent with this Memorandum Opinion and Order.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and the pro se plaintiff, return receipt requested.

DATED: March 19, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE